George Weiderman Electric Co., Inc. v. Commissioner.
George Weiderman Elec. Co. v. Commissioner
Docket No. 17654.
United States Tax Court
1950 Tax Ct. Memo LEXIS 313; 9 T.C.M. (CCH) 17; T.C.M. (RIA) 50002; January 10, 1950
Morris Gogolick, Esq., 521 Fifth Ave., New York, N. Y., for the petitioner. Ellyne E. Strickland, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding is for the redetermination of a deficiency in income tax asserted against the petitioner for the year 1945, in the amount of $971.99. The only question for us to decide is whether the petitioner is entitled to a deduction for a bad debt, or a loss, alleged to have been sustained as a result of purchasing 100 shares of its own capital stock, for $13,122.21. The *314 case was submitted on a stipulation of facts and oral evidence. The facts as stipulated are so found. Such part thereof as it is considered necessary to set forth are included with other facts found from the evidence adduced in our Findings of Fact Petitioner is a corporation organized and existing under the laws of the state of New York, with its principal place of business in Brooklyn, New York. Its income tax return for the year 1945 was filed on an accrual basis with the collector of internal revenue for the first district of New York. At the beginning of the year 1945 petitioner's issued and outstanding capital stock consisted of 500 shares of common stock of the par value of $100 per share. Of this stock 100 shares were owned by one A. Sidney Reynolds, who had been employed by petitioner as a salesman. On December 26, 1945, Reynolds was indebted to the petitioner corporation in the sum of $8,872.21 and he was not then in the petitioner's employ. Negotiations resulting in the purchase by the petitioner of the 100 shares of its stock from Reynolds began on December 3, 1945, at which time Reynolds said he would sell them for $10,000. The petitioner was willing to pay *315 $10,000 but claimed an offset of an indebtedness Reynolds owed the petitioner. Negotiations for the purchase of the stock followed through the month of December. The transaction was closed on December 27, by petitioner purchasing from Reynolds the 100 shares of stock for $13,122.21 and in payment thereof petitioner canceled Reynolds' indebtedness to it in the amount of $8,872.21 and gave him a check for $4,250. In its income tax return for the year 1945 the petitioner claimed a deduction for bad debts in the amount of $3,557.91, of which sum the amount of $3,122.21 represented a loss alleged to have been sustained by the petitioner as the result of purchasing, for $13,122.21, 100 shares of its common stock having a par value of $100 per share. Opinion On its income tax return filed with the Commissioner, petitioner claimed the amount of $3,557.91 as a bad debt, of which the respondent disallowed the amount of $3,122.21. The petition claims deduction of the latter amount as bad debt for 1945. As we understand petitioner's briefs, we conclude that it has now abandoned the contention that the amount in question represented a bad debt, and, if it is not abandoned, we hold that petitioner *316 has offered no evidence that the amount was a bad debt. However, the petitioner does argue that the amount should be allowed as a loss and contends that the deduction is controlled by sections 22 (a), 111 and 113 (a) of the Revenue Act of 1938, and Section 29.22 (a)-15 of Regulations 111. In its argument that it suffered a loss, petitioner contends that the fair market value of the stock must be established to determine the amount of loss, and further contends that, on the basis of Buena Vista Land & Development Co., v. Lucas, 41 Fed. (2d) 131, it has established that the fair market value of the 100 shares of stock purchased from Reynolds was $10,000. We do not think that such a value has been established. The Buena Vista case did allow a basis to be established on evidence comparable to the evidence that petitioner here relies on, but in that case such evidence was all the court had. We are of the opinion that the Buena Vista case stands only for the principle that the best evidence available is all that can reasonably be required. However, in the instant case the offer to buy and sell the stock by the respective parties for $10,000 is not the best evidence of the *317 fair market value of the stock. The transaction was not consummated at that price. Rather, within the same month that the $10,000 offer was made, the petitioner paid $13,122.21 for the stock (that is, he canceled Reynolds' indebtedness to it in the amount of $8,872.21 and paid the additional amount of $4,250). Such evidence of an actual sale, within the same month, is better evidence of the fair market value of the stock than the evidence of a mere offer to buy and sell, which offer was never consummated. The best evidence before us is that the fair market value of the 100 shares of stock purchased was at least $13,122.21. Since petitioner has failed to prove a fair market value of the stock purchased other than the amount of $13,122.21, we conclude that it has failed to prove its case on the contention advanced in its briefs. Neither are we convinced that petitioner has proved that he sustained a loss on the purchase of the stock in accordance with the statutes and regulations cited. We have carefully considered the sections of the Revenue Act of 1938 and the sections of Regulations 111, cited above. We do not regard them as entitling petitioner to the loss now sought. The petitioner *318 purchased stock, paying, in part, by releasing an indebtedness to it. With no showing that the indebtedness was in fact worthless, even in part, and with the petitioner not now claiming worthless debt, we have passed that question. Yet it is obvious that the only way the petitioner could have been injured was by not collecting its debt in full, for in fact it merely purchased property for an agreed price. Purchase, not sale, of property does not, ordinarily at least, result in loss; and the petitioner has failed to show that the facts of sale here involved caused a loss to it. If it paid more than the property was worth - a point also not shown, as above noted - it will merely have a higher basis if, and when it sells the property. We are unable to find a loss to one who, voluntarily, even though in order to collect a debt (not otherwise shown uncollectible) pays a certain price for property, even assuming, what is not here shown, that the purchase price was more than value. We are not convinced that petitioner has suffered a loss. From the facts before us, we conclude that petitioner acquired 100 shares of its stock, previously owned by Reynolds, in which it now has a cost basis *319 of $13,122.21, and that no loss was thereby sustained in 1945. Decision will be entered for the respondent.